Eddie Johnson, Petitioner,

*v.*

V. G. Hailey, Administrator of the Estate of
C. R. Morrison, Respondent.

(*Jackson*, April Term, 1959.)

Opinion filed May 1, 1959.

Ashley & Ashley, Dyersburg, for petitioner.

Sam C. Nailling, Union City, Charles L. Neely, Memphis, William M. Morrison, Atlanta, Ga., for respondent.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

When Dr. C. R. Morrison, a physician of Obion County, died on August 15, 1957, his son, W. M. Morrison, a lawyer in Atlanta, Georgia, appears to have been somewhere in Michigan. This son was the only child and heir at law of decedent. A brother of deceased, the Rev. S. B. Morrison of Newbern, Tennessee, contacted the undertaker, Eddie Johnson, and made the funeral arrangements, including selection of casket, time and place of services. The entire funeral bill was $872.99, including

a vault for $200. The estate of Dr. Morrison amounted to about $3,500.

The Rev. Morrison sent the son of deceased, W. M. Morrison, by way of Atlanta the following telegram:

"Your father died last night. Funeral tomorrow 3 P.M."

This telegram was received by this son about 24 hours before this funeral. It did by necessary implication inform him that his uncle or some one back in Obion County had made funeral arrangements, including procurement of casket, etc. He made no inquiry by phone or otherwise as to what these arrangements were, or to delay them until he arrived. Instead he got in his car and drove to Newbern, arriving there one-half hour, he says before the funeral, after having driven a distance of 900 miles. He necessarily saw the casket, etc. He entered no inquiry, so far as the record indicates.

In due course, the undertaker, Mr. Johnson, filed his claim in the County Court for the merchandise sold and services furnished. That the charges were reasonable is affirmatively established, not denied, and no point made thereof. In fact, this son, W. M. Morrison, representing the administrator in the County Court (which of course amounted to representing himself) states to the Court that *quantum meruit* was not being relied upon.

Objection was made on the ground that his father had two certificates of $100 each in Burial Associations of which Johnson was secretary and, in fact, owner, for all practical purposes; that the undertaker, Johnson, was under an obligation by the very terms of these certifi-

cates to furnish a $200 burial; hence that the estate is not liable for any amount beyond the $200 with which the undertaker had credited the claim.

The County Judge allowed the undertaker's claim. The Court of Appeals disallowed it, with the exception of the $200 already paid. The undertaker files this petition for *certiorari*.

The certificates of membership in the Burial Association issued to Dr. Morrison in 1953 provided that he is entitled to "all the benefits of the association as set forth in the by-laws". Section 10 of these by-laws provides that the secretary-treasurer of the Association (Johnson, and so named in the by-laws) shall furnish for the burial of a member dying, a casket, service and hearse "up to the standard and in keeping with the caskets and services sold at a similar price by funeral directors" with the privilege "of selecting the casket as to color, design, etc.", accorded "the relatives of the deceased member, or those in charge".

The opinion of the Court of Appeals is that by reason of the above provision "Mr. Johnson was under a contract to bury Dr. Morrison with a *respectable* funeral service for the price of $200.00 to be paid out of the funds of the two Burial Associations". (Emphasis supplied.) The foregoing statement of the Court of Appeals is an unintentional overstatement. What was to be furnished for the $200 was such a casket and burial as $200 would procure, measured by "the standard and in keeping with the caskets and services sold at a similar price by funeral directors". Whether such a funeral would be "a respectable funeral service" measured by

decedent's station in life and size of estate would, we suppose, depend upon an individual's opinion thereof.

So, the Court of Appeals says that Mr. Johnson "without authority from the only son and next of kin of the deceased, and acting solely upon the instructions of the surviving brother" furnished the $872.99 funeral without making any "effort to communicate with" this son or "to obtain his wishes concerning the type funeral to be furnished his father. Nor did he have any assurance that the son would receive the notice of his father's death in time to be present at the funeral". Under those circumstances, says the Court, the undertaker "was not justified in affording the expensive funeral to Dr. Morrison solely upon the instructions of Rev. Morrison", hence, the County Court's order allowing the claim to the full amount was modified to allow it only to the extent of the two burial policies. Implicit in the foregoing remarks of the Court of Appeals is its opinion that had the son been in charge he could have legally bound the estate for a more expensive funeral. And this view taken by the Court of Appeals seems to be shared by the attorneys representing the administrator (in reality, the son). In their answer to the petition to rehear in the Court of Appeals these attorneys state this:

"The only cases that would ever allow the transgressor to recover would be those cases in which there would be no chance of getting in touch with the proper parties."

Brother of deceased got in touch with proper party, who made no response.

The evidence is that the undertaker knew the decedent had a son but he had never seen him. He had known for

years the decedent's brother, the Rev. Morrison, and that it was his brother who "gave notice to him of the death", and made the funeral arrangements, including the selection of the casket, time and place of services; that he relied upon the Rev. Morrison to convey notice of the funeral to relatives of the deceased. Moreover, this son lived in another State. He was located by telegram from his uncle by way of Georgia and forwarded to somewhere in Michigan.

Eliminating for the minute the by-laws of the Burial Association, under the circumstances stated, ought it to be said that the Rev. Morrison was an interloper in making the funeral arrangements?

"The dead must be buried, and any friend, if the matter be not attended to by the family, executor, or administrator, even may authorize an undertaker to attend to the funeral, and the estate of the decedent will be liable for a reasonable amount." *Nashville Trust Co. v. Carr,* Tenn.Ch.App. 62 S.W. 204, 205-206.

In *Golsen v. Golsen,* 127 Ill.App. 84, the right of a brother to arrange for the funeral at the expense of the estate was under the circumstances there existing approved, the Court saying:

"A stranger under certain circumstances, and especially a relative of the deceased, may contract for the funeral of a deceased person and pay for the same, and the expense, if reasonable, will be allowed him." 35 A.L.R.2d 1407.

Se also *Security Bank & Trust Co. v. Costen,* 169 Ark. 173, 273 S.W. 705, and *Andrade v. Azevedo,* 9 Cal.App. 2d 495, 50 P.2d 80. Many more cases citing that rule

could be cited. In point is *Fogg v. Holbrook,* 88 Me. 169, 33 A. 792, 33 L.R.A. 660, holding this:

"The articles were selected and ordered by a brother of the deceased, her nearest relative, and others, without the personal knowledge, consent, or subsequent ratification of the defendant, the executor, who, although he knew of her death, and that he was named as executor in her will, gave no directions and made no arrangements in regard to the funeral.

"The only questions raised are whether the estate of a deceased person is holden for the reasonable and proper burial expenses, neither ordered nor ratified by the subsequently appointed executor or administrator, so that a suit may be maintained against an executor, in his representative capacity, to recover for such reasonable expenses; and, if so, how much of the expenses incurred, and sought to be recovered in this case, are reasonable, in view of all the circumstances." (88 Me. at pages 171-172, 33 A. at page 793, 33 L.R.A. at pages 662-664.)

"But we think that it is the more reasonable rule to hold that the estate of a decedent should be liable for all such reasonable expenses as are properly incurred in providing a decent burial. When such expenses are incurred, necessarily after the death of a person, there is no one legally authorized to represent the estate. The services must be rendered, and necessary articles furnished, immediately. It is better that these things should be done upon the credit of the estate, than that there should be hesitation and inquiry as to who is liable to pay." (88 Me. at page 172, 33 A. at page 793, 33 L.R.A. at pages 665-667.)

"The law pledges the credit of the estate of the deceased for a decent burial immediately after the decease, and for such reasonable sums as may be necessary for that purpose, even though such expenses may have been incurred after the death, and before the appointment of an administrator." (88 Me. at page 173, 33 A. at page 794, 33 L.R.A. at page 669.)

This Court is of the opinion that the Rev. Morrison was not an interloper in making for his deceased brother the funeral arrangements, now questioned through the administrator by the son.

Do the by-laws of this Burial Association authorize this brother, if he be not an interloper, to make funeral arrangements costing more than the $200 called for by the Burial certificates? Section 9 of these by-laws is as follows:

"If a more expensive funeral than provided for by the Association is desired, the amount may be supplemented by the relatives or those in charge".

Certainly under the aforestated circumstances of this case the foregoing section of the by-laws reasonably may be construed as authorizing this brother, who was necessarily in charge, to arrange for a more expensive funeral than one costing $200 and bind the estate of decedent passing to this relative (son) provided he not go beyond that which is reasonable. And it is conceded that the charges were reasonable. The fact that this man was a physician who practiced for many years in that community and left an estate of $3,500 seems sufficient also to require the conclusion that it was a funeral not overdoing his station and standing in life, considering the financial circumstances of the estate.

It is further this Court's opinion that this son, sole beneficiary of the estate, is *estopped* from seeking, directly or indirectly, to avoid payment of this reasonable funeral expense. The telegram from his uncle advised him as to the day and hour of the funeral. This necessarily put him on notice that arrangements as to a casket, etc., had been made. This was nearly 24 hours before the time he knew the funeral services were to be held. He could have contacted his uncle or some one else by phone within a matter of minutes and inquired as to what those arrangements were; and have changed them, if he had so desired. But he made no inquiry and accepted those services knowingly and without objection.

The judgment of the Court of Appeals will be reversed, and that of the County Court of Obion County affirmed with all costs adjudged against V. G. Hailey, as administrator of the estate of C. R. Morrison, deceased.