Orville V. SIMMONS and Vivian Baccus,
Plaintiffs in Error,

v.

Vera Mae SIMMONS, Vida Cromwell and
Vena Barnes, Defendants in Error.

No. 38852.

Supreme Court of Oklahoma.

Oct. 18, 1960.

Rehearing Denied Dec. 20, 1960.

950

Jake Blevins, King & Wadlington, by Carloss Wadlington, Ada, for plaintiffs in error.

McArthur & Orton, by C. L. McArthur, Ada, Stevenson, Huser & Huser, by Alfred Stevenson, Holdenville, for defendants in error.

JOHNSON, Justice.

This action was brought for partition of certain described lands located in Pontotoc County, Oklahoma, and for approval of separate accounts submitted by two of the plaintiffs, Vera Mae Simmons and Vida Cromwell.

The alleged and admitted facts are that the plaintiffs (defendants in error), Vera Mae Simmons, Vida Cromwell and Vena Barnes, and the defendants (plaintiffs in error), Orville V. Simmons and Vivian Baccus, are the children and only heirs of Walter Simmons. Walter Simmons died on the 22nd day of April, 1953; that on the third day of December, 1949, Walter Simmons, in order to eliminate administration expenses of his estate, conveyed to his daughter, Vera Mae Simmons, the one hundred and sixty acre farm on which she and her father had lived for many years prior thereto and where she continued to live; and she, by agreement, admittedly held the land in trust for herself and the

other children, share and share alike, subject to the "expenses of (the) last illness" and funeral expenses of their father.

The trial court decreed that the land be partitioned, appointed commissioners who appraised the land and reported the nonfeasibility of partitioning said land. Thereupon, Vera Mae Simmons and Orville V. Simmons in opposition to each other elected to purchase the land at the commission's appraised value of $8,000. No order of sale of the property has been made pending determination of the accounting issues. The legality of the partition proceedings and the existence of the alleged trusteeship are unquestioned. Only errors allegedly inherent in the order and judgment of the trial court in allowing the separate accounts of Vera Mae Simmons and Vida Cromwell are presented and argued in this appeal.

The defendants' contentions of error may be summarized briefly as follows: First, that (a) the services rendered by Vera Mae Simmons and Vida Cromwell in caring for their father during his last illness were presumably gratuitous, and that such presumption was not overcome by evidence; that (b) the expenses of last illness of Walter Simmons, as allowed Vera Mae Simmons and Vida Cromwell in their accounting, was improper because same was not within the period and meaning of "(E)xpenses of last illness." Second, that the trial court erred in allowing certain charges made in the amended account of Vera Mae Simmons as trustee; and, third, the trial court erred in allowing the account of Vida Cromwell as a charge against the property; fourth, the court erred in (a) not charging the trustee for value of the use and occupation of the house and other improvements since the death of Walter Simmons; (b) in not requiring the trustee to account for rents and profits and for benefit received from use of property; (c) that the court erred in giving the trustee credit for $50 for labor on the little house which was burned, and, finally, that the court erred in overruling defendants' motions for leave to file amendment to answers.

■ These facts and contentions all involve matters of equitable cognizance, and we, therefore, will apply the general rule that in actions of equitable cognizance we will examine the record and weigh the evidence, but the decree, or judgment, will be sustained on appeal unless the same is found to be against the clear weight of the evidence or contrary to law.

■ The contention that the services rendered by the aforementioned plaintiffs were gratuitous is, in our opinion, without merit. Neither party plaintiff comes within the provisions of our statute, 10 O.S.1951 § 16, which provides:

"Where a child, after attaining majority, continues to serve and to be supported by the parent, neither party is entitled to compensation in the absence of an agreement therefor."

The evidence herein is conclusive that the father did not continue to support Vera Mae Simmons, but that she supported him; and that Vida Cromwell was married and lived with her family in Ada, Oklahoma, and drove to and from Ada to the farm each day for a period of almost two years where she cared for her father in his home while Vera Mae was teaching school and earning the money with which she maintained herself and her father. In addition thereto in the trust contract of October 26, 1951, between Vera Mae Simmons and the other children, attached to plaintiffs' pleading and admitted in evidence, there is this statement, "(I)t is further understood and agreed that said Walter Simmons, on the 3rd day of December, 1949, and on this date has no bank account, cash or securities and that the tract of land above described (the land here in question) shall be used to the extent necessary to pay the last illness and funeral (of their father) and that thereafter the parties (children) shall participate equally." (Words in parenthesis added.) The evidence discloses that Walter Simmons was then ill, confined to his room and was never able to leave the house thereafter except when taken to a doctor's office in a car where he was treated without

being removed from the car, and so continued ill and unable to earn anything or even to wait on himself up until his death approximately two years later. Furthermore, the undisputed evidence shows that some two years before the date of this contract, Walter Simmons had conveyed the land in question to Vera Mae Simmons, obviously in order to be used for the payment of his necessary care and expenses thereafter incurred, but out of the goodness of her heart she entered into the aforesaid agreement to share equally with her brother and sisters what remained from the proceeds of the farm after the necessary expenses incurred by reason of her (their) father's last illness and funeral; and that notwithstanding the fact that for many years she had turned over to her father the salary that she received as a public school teacher, which he deposited in his personal bank account and used at his discretion without reimbursing her, and up until her father deeded the farm to her, all of which, we believe, removes any question as to whether the services of Vera Mae Simmons were gratuitous. See cases in annotation 7 A.L.R.2d 8 to 191.

A somewhat different rule applies to Vida Cromwell's claim for her services rendered to her father. She was not a member of the family of Walter Simmons so as to invoke the statutory rule quoted above, 10 O.S.1951 § 16. She had married and left home, and at that time and since has maintained her home in Ada, Oklahoma. She furnished her own car and commuted back and forth from her home to the home her sister Vera was maintaining for her father on the land in question in order to nurse and assist in the care of her father, Walter Simmons. Under these circumstances, the rule is that the services of such adult child will not be presumed to be gratuitous, but that where such services are rendered and voluntarily accepted, a promise to pay is implied. Winkler v. Killian, 141 N.C. 575, 54 S.E. 540, 115 Am.St. Rep. 694; Ellis v. Cox, 176 N.C. 616, 97 S. E. 468; Nesbitt v. Donoho, 198 N.C. 147, 150 S.E. 855, 875; Patterson v. Rehfuss, 250 Ala. 508, 35 So.2d 330; Steel v. Steel, 12 Pa. 64.

The evidence discloses that Vera Simmons, who lived with and had the principal care of her father under the contract with him, requested and accepted the services of Vida Cromwell on the express understanding that she was to receive reasonable compensation for her services rendered in the care and nursing of her invalid father, and the evidence shows that one such payment was made to her (Vida Cromwell) by Vera Simmons and charged by her in her account as expenses for the care of their father.

The rule governing in such cases is expressed in the annotation in 7 A.L.R.2d 67 as follows:

"The view has been taken in some instances that if the parent is incapable of rendering any services so that a mutuality of benefits is absent, no presumption of gratuity will arise with respect to the services of the child.

"Thus, in re Grogan's Estate (1913), 82 Misc. 555, 145 N.Y.S. 285, the care and attention furnished a parent was not presumed to be gratuitous where it appeared that the daughter, who claimed compensation from the father's estate, for a period of about four and one-half years watched over and cared for the practically helpless and bedridden father without assistance from his other children, foregoing all social functions and absenting herself from home only two days during the entire period, at which time her husband obtained two days leave of absence from his work to care for the father, and rendered such services without receiving any compensation and without the father being able to do anything for her. The court said that the presumption of gratuitous services springs from the existence of mutuality of consideration, reciprocity, privileges and benefits on the one hand and corresponding duties and obligations on the other, and that in a case where all

elements of reciprocity are lacking where it is simply a matter of labor and services on one hand without benefit or advantage on the other, no equitable reason exists for disallowing compensation."

The case of In re Parker's Estate, 69 Misc. 136, 126 N.Y.S. 165, is to the same general effect. See also Stacy's Adm'r v. Stacy, 296 Ky. 619, 178 S.W.2d 42.

Under the factual situation herein and the above listed authorities, reasonable charges for the services rendered in the care of their father by Vida Cromwell and Vera Mae Simmons were proper. Such services could not be deemed presumptively gratuitous.

■ We next consider plaintiffs' contentions that the expenses allowed were not within the "period" and "meaning" of "expenses of last illness," as provided for under the provisions of Sec. 591, 58 O.S. 1951.

That part of said section pertinent to this contention and argument is as follows:

"Section 591. The debts of the estate must be paid in the following order: 1. Funeral expenses. 2. The expenses of the last sickness. 3. * * * 4. * * * 5. * * * 6. * * * 7. * * * 8. * * *"

The item of funeral expense is unquestioned, and the above statute does not limit the "last illness" (or sickness) to any definite length of time or period. The "last illness" as contemplated by the statute is that last illness from which the patient never recovered, but died, and the care contemplated by the statute is care of an individual personal nature and that which is continuous during the period of the "last illness." Brogden v. Baugh, 176 Okl. 339, 55 P.2d 994. Such care must be such as is usually rendered by a nurse. It must be personal care to the person of the decedent. 21 Am.Jur., Executors and Administrators, Sec. 397; 24 C.J., Executors and Administrators, Sec. 1167. See also (same subject matter) 34 C.J.S. Executors and Administrators, p. 317, and definition of "last illness" 36 C.J. page 954.

In 21 Am.Jur., Sec. 397, supra, it is stated:

"The term 'last illness,' or 'last sickness' is not susceptible of exact definition. It may be stated generally that it means the illness or sickness which was the cause of the decedent's death and covers the period during which it was continuously operative after it became serious or pronounced."

A very profound and extended judicial definition of the term "last illness" is found in the case of United States v. Frisbie, C.C., 28 F. 808, at page 808, wherein in the 3rd editorial headnote it was said:

"The last sickness means the sickness that results in death. It may be more or less extended, according to the circumstances of the disease. In an acute disease, where a man was well until he was confined to his bed, and then died, it would count only from the time he was prostrated; but if it was a lingering case, admitting of transient temporary recuperation, followed immediately by relapses, and every day adding to the aggregate weakness, the last illness would commence from the time this consumption, in a pronounced way, set in."

And in the body of the opinion at page 810, the court (C.C.La.) with emphasis on the nature of the "last sickness" said:

"Now, I want to define what is meant by the last sickness. As the court remarked during the trial, great weight is due to the opinion of the departments with reference to the meaning of words in the statutes; but, when the question is submitted to the court, it is a judicial question, and the court, after examining the subject, is bound to tell you the meaning of the words. The last sickness means the sickness which results in death. It may be more or less extended, according to the circumstances of the disease. If it

is an acute disease, where a man was well, until he was confined to his bed, and then died, it would count only from the time in which he was prostrated and confined to his bed. But if it was such a case as this was, lingering, and, while admitting of transient temporary recuperation, followed immediately by relapses, and every day adding to his aggregate weakness, why, the last sickness would commence from the time this consumption, in a pronounced way, set in. You must deal with that as you find it. It may be a year or less. It was from the time that he took to his bed and never left it. On the other hand, it should not be extended over a lifetime, but you must, as sensible men, look at it, when, in the opinion of doctors, and in the opinion of those who knew, he had the disease operating upon him from which he died. Consumption of the lungs is a very weakening disease, and a very protracted one."

■ The evidence in this case discloses that Vera Mae Simmons and Vida Cromwell rendered services and care of an individual personal nature, such care as was usually rendered by a nurse. Their services were personal care to the person of the decedent, their father; and such care was continuous during a two-year (or more) period of the "last illness" or "sickness" of their father. Their services were extraordinary and menial, so that the general rule contended for by defendants (plaintiffs in error) does not apply. We, in the absence of Oklahoma precedent, and for the foregoing reasons and cited authorities hold that such services were not presumptively gratuitous and were rendered during the "last illness" or "sickness" of their father, and that the items of service and expenses allowed by the trial court are just and proper in the circumstances of this case. The judgment of the trial court is not against the clear weight of the evidence.

The other contentions, or questions raised by appellants, hereinbefore noted, are held to be without merit, and we deem it unnecessary to discuss them.

Affirmed.

DAVISON, C. J., WILLIAMS, V. C. J., and WELCH, HALLEY, BLACKBIRD, IRWIN and BERRY, JJ., concur.