2000 OK 87

In the Matter of the ESTATE OF Doris MacFARLINE, Deceased,

L.G. MacFarline, Jr., Plaintiff/Appellant,

v.

Stephen P. Regouby, Successor Personal Representative of the Estate of Doris MacFarline, Deceased, Defendant/Appellee.

No. 92,350.

Supreme Court of Oklahoma.

Nov. 7, 2000.

552

David C. Butler of McKnight & Gasaway, Enid, OK, for Appellant.

Carey Cobb Calvert and Robert D. Hart of Tom L. Armstrong & Associates, Tulsa, OK, for Appellee.

LAVENDER, J.

¶1 Appellant, L.G. Macfarline, Jr.—a nephew of Doris Macfarline (decedent)—submitted a creditor's claim to appellee, Stephen P. Regouby, the successor personal representative (SPR) of decedent's estate. The claim sought to have the estate reimburse him for his payment of: decedent's funeral/burial expenses; decedent's medical bills and certain other debts of decedent; and certain expenses alleged by him to be estate administration costs. The SPR did not approve any part of the claim so nephew sued for reimbursement. Counter-motions for summary judgment were filed. The trial judge denied nephew's motion and granted the SPR's motion, essentially ruling he made the payments voluntarily, without right or duty and, thus, was not entitled to any reimbursement. Upon nephew's appeal, the Court of Civil Appeals (COCA) affirmed, basically ruling: the record supported the trial court's decision because it sufficiently showed he made the payments as a volunteer with no protectable interest in the estate.

¶2 Nephew sought certiorari, which we previously granted. We hold material factual questions precluded summary judgment for either party and the legal analyses of both the trial judge and COCA were, at least, partially in error. Although the record is insufficient to show nephew's entitlement to summary judgment as to the totality of his claim, neither does it support summary judgment in the SPR's favor. The record does not conclusively show nephew was a volunteer unentitled to any reimbursement. Nor does it show a lack of protectable interest in the estate. Further, lack of a protectable interest in the estate would not automatically foreclose reimbursement for nephew's payment of reasonable funeral/burial expenses. We vacate the COCA's decision, reverse the trial court judgment, and remand to the trial court for further proceedings.

PART I. STANDARD OF REVIEW.

¶3 Summary judgment is reviewed de novo. In Carmichael v. Beller, 1996 OK 48, 914 P.2d 1051, 1053 we said:

Although a trial court in making a decision on whether summary judgment is appropriate considers factual matters, the ultimate decision turns on purely legal determinations, i.e. whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions. [A]s the decision involves purely legal determinations, the appellate standard of review of a trial court's grant of summary judgment is *de novo.* [An appellate court], like [a] trial court, will examine the pleadings and evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact. Further, all inferences and conclusions to be drawn from the evidentiary materials must be viewed in the light most favorable to the non-moving party. (citations omitted)

In the *de novo* review an appellate court engages in a plenary, independent and non-deferential re-examination of the trial court's ruling. *Manley v. Brown,* 1999 OK 79, ¶ 22 fn. 30, 989 P.2d 448.

■ ¶ 4 In *Prudential Ins. Co. of America v. Glass,* 1998 OK 52, ¶ 3, 959 P.2d 586, the review standard was further delineated as follows:

[A] summary judgment ruling must be made on the record actually presented by the litigants, not on a record potentially possible. If the summary judgment submissions disclose either controverted material facts, or, reasonable minds might reach different conclusions even if the material facts are undisputed, summary judgment should be denied. It must be remembered, neither this Court [n]or a trial court weighs the evidence on a motion for summary judgment and it is not the purpose of such procedure to substitute a trial by affidavit for a trial according to law. Weighing of evidence is a function for the jury and, in a non-jury case, for the trial judge after an appropriate trial of the issues. Finally, only if the movant for summary adjudication satisfies the initial burden to show entitlement to summary judgment is it incumbent on the non-movant to demonstrate by his/her own submissions the existence of a substantial dispute as to some material fact. (citations omitted)

It was made clear in *Spirgis v. Circle K Stores, Inc.,* 1987 OK CIV APP 45, 743 P.2d 682 (approved for publication by Oklahoma Supreme Court), even when an opposing party fails to respond to a summary judgment motion the trial judge still must insure the motion is meritorious. 743 P.2d at 685. Thus, if a moving party has not addressed all material facts, or one or more such facts are not appropriately supported by the evidentiary materials submitted, summary judgment for the movant is not proper. *Id.* Consequently, the fact both sides to a lawsuit file counter-motions for summary judgment does not automatically mean summary judgment for one party or the other is proper. For a party to be entitled to summary judgment in his/her favor, the record **must** show that party entitled to judgment as a matter of law.

## PART II. FACTUAL RECORD AND PROCEDURAL HISTORY.

¶ 5 In response to the SPR's March 1997 notice to creditors in decedent's probate case nephew, by a creditor's claim, sought reimbursement for his payment of decedent's funeral/burial expenses; medical bills allegedly incurred by decedent[1] and certain other

1. In their certiorari submissions, the parties—particularly nephew—refer to the medical expenses as last illness expenses. The first time the medical expenses were referred to as "last illness" expenses of decedent was in the Court of Civil Appeals' (COCA) opinion. Prior to the COCA opinion said expenses were never referred to or claimed to be "last illness" expenses. *Simmons v.. Simmons,* 1960 OK 214, 357 P.2d 949, 950 *Third Syllabus* defines the phrase "last illness" in this way:

The term 'last illness' or 'last sickness' is not susceptible of exact definition. It may be stated generally that it means the illness or sickness which was the cause of the decedent's death and covers the period during which it was continuosly (sic) operative after it became serious or pronounced. It may be more or less extended, according to the circumstances of the disease; that is, if it was a lingering case, admitting of transient temporary recuperation, followed immediately by relapses, and every day adding to the aggregate weakness, finally resulting in death, then the 'last illness' would commence at the beginning of the illness and end at death.

debts of decedent; and certain expenses alleged by him to be estate administration costs. The payments were: $6,740.55 to a funeral home, $1,184.29 in medical expenses; $55 for 1994 Oklahoma income tax; $13 for 1994 federal income tax; $30 for preparation of 1994 income tax returns; $1,170 for preparation of an Oklahoma estate tax return; $5 for a monthly assessment to the Highland Park Homeowner's Association; $250 appraisal fee; $126.72 for lawn care at decedent's residence; $183.76 to the City of Tulsa, $90.68 to TCI Cablevision, $134.85 to SW Bell Telephone, $335.90 to Oklahoma Natural Gas and $138.82 to Public Service—the latter six apparently associated with upkeep of decedent's residence after her death. The total of the above payments is about $10,500.

¶ 6 The SPR failed to approve any part of the claim so nephew sued for reimbursement. Eventually, the parties filed counter-motions for summary judgment. They did not, however, stipulate to the material facts. Nephew's motion and its evidentiary materials show decedent died in January 1995 leaving a will dated December 28, 1994. The will states decedent married only once (in 1930); her husband predeceased her in July 1991; and she had no children, natural or adopted. The will devises her Tulsa residence (exclusive of furnishings) to Highland Park Christian Church (Church)(also located in Tulsa); names nephew residuary beneficiary; and Joe Buckner (decedent's neighbor) personal representative (PR). Further, although the will directs the PR to pay, as soon as practical after decedent's death, all expenses due and owing, or which may become due and owing, against her estate—including administration, last illness and funeral expenses—it **does not** specify the source from which the expenses should be paid.

¶ 7 The summary judgment record does not contain an exact inventory of estate assets. However, evidentiary materials show the main asset was decedent's residence (valued at $ 66,000 for estate tax purposes) and that the residuary assets were household items, furnishings and personal belongings (valued at $1,500 for estate tax purposes).

Nephew's affidavit—submitted to support his summary judgment quest—acknowledges he took possession of, with the PR's permission, certain unspecified items of decedent's personal property between the time of death and October 1995. The summary judgment record fails to conclusively show the value of said items, the ultimate disposition thereof, and it does not conclusively show the ultimate disposition of the remainder of the residuary estate. Although nephew's motion states as undisputed facts that other unnamed nieces and nephews of decedent received certain personal property and that the PR disposed of other specified items of personalty (apparently to other unnamed individuals or organizations), no evidentiary material was submitted to actually substantiate the statements. We note an affidavit of the SPR, however, does attest that the original PR and nephew either disposed of or took all the residuary estate.

¶ 8 In his affidavit nephew states, in essence: the PR did not initiate probate until October 1995 (about nine months after decedent's death); he repeatedly requested the PR to initiate probate prior to October 1995; and because the PR failed to take action for the payment of creditor claims or estate administration expenses between the date of decedent's death and October 1995, he-nephew-paid the debts and expenses for which he seeks reimbursement. His summary judgment reply brief asserts his payment had the salutary effect of avoiding potential lawsuits, interest, late charges, and other potential charges to the estate. Further, although the record fails to contain underlying bills or statements from the individuals/organizations paid by nephew, attached to his motion is a list itemizing the payments made and detailing to whom he made payments.

¶ 9 Nephew's summary judgment submissions also show decedent had about $235,000 in bank accounts when she died, and his affidavit attests the accounts were held in joint tenancy and he was the surviving joint tenant. An Oklahoma estate tax return—presented with his motion—indicates there were four accounts (two checking, one inves-

Whether the expenses were simply medical expenses or last illness expenses, or a combination of the two, does not affect our disposition of this matter.

tor and one money market) and that nephew was the joint owner of the accounts. The record does not show the circumstances surrounding creation of the accounts; however, as we read the summary judgment submissions, both parties agree decedent was the original source of all funds therein.[2]

¶ 10 Nephew's summary judgment evidentiary materials also show he filed the Oklahoma estate tax return; he paid about $12,000 in estate tax to the Oklahoma Tax Commission (OTC); and he obtained an OTC estate tax lien release in September 1995. Pursuant to 68 O.S.1991, § 806(a) Oklahoma estate tax is due and payable nine months after a decedent's date of death. Nephew's claim does not seek reimbursement for the estate tax paid by him.[3]

¶ 11 The SPR, who is Chairman of the Board/Trustee of Church, responded to nephew's motion and filed a counter-motion for summary judgment. The record shows the SPR replaced Mr. Buckner as PR in 1996 after Church petitioned for revocation of the PR's letters testamentary. The SPR's amended response/counter-motion asserts nephew is unentitled to reimbursement because he made the payments voluntarily and, the SPR contended, the expenses were paid with decedent's own funds, i.e. with monies nephew received either as a joint tenant or as residuary beneficiary under the will. The SPR's amended response/counter-motion also

expresses a belief that it is obvious decedent intended her home to go to the Church free and clear of any estate expenses.

¶ 12 The SPR's affidavit (attached to his amended response/counter-motion) states decedent was a longtime member of Church. It also states: nephew ransacked decedent's residence, and left the house full of trash and in need of repair; nephew subjected the estate to certain unspecified unpaid bills; the house had to be sold to pay unspecified debts of the estate; nephew and the PR either disposed of or took all of the estate's residuary property; and no accounting has ever been made of the residuary estate.

¶ 13 The amended response/counter-motion also asserts the PR had knowledge nephew was making the payments for which he claims reimbursement. Although the summary judgment evidentiary materials do not conclusively establish the PR had such knowledge, the record does contain evidentiary material (letters between the SPR's/Church's previous lawyer and the original PR's lawyer; and nephew's expense itemization that appears to show Mr. Buckner was actually paid for lawn care at decedent's residence) that raise an inference the PR had such knowledge, the PR acquiesced in nephew's payment(s) and the PR tacitly sanctioned nephew's payments. We also note, the summary judgment record **does not** conclusively show nephew paid the debts/estate

---

**2.** An Oklahoma estate tax return—prepared for nephew by a certified public accountant and filed with the Oklahoma Tax Commission—is consistent with an assumption decedent was the original source of the funds. This is so because under 68 O.S.1991, § 807(A)(4)[now 68 O.S. Supp. 1998, § 807(A)(4) ], if nephew was the original source of some funds in an account, said amount would have been **excludable** from the gross estate of decedent to arrive at a determination of the value of the net taxable estate for estate tax purposes. The return shows all funds in the accounts were **included** in the gross estate and net estate for estate tax purposes. In other words, the return treats all amounts in the accounts as if decedent was the original source of all funds therein.

**3.** For estate tax purposes the **taxable** estate may include **non-probate** assets, including funds in joint tenancy bank accounts. *Estate of LeDonne v. Stearman*, 1986 OK 77, 730 P.2d 519, 522. Under the equitable apportionment doctrine—

which became entrenched in Oklahoma with *In re Davidson*, 1982 OK 27, 641 P.2d 1110—in the absence of a contrary expression of testamentary intent, equitable principles impose the responsibility for the payment of estate tax on property generating the tax and exonerate property which does not incur federal or state estate tax liability. *Estate of LeDonne v. Stearman*, 730 P.2d at 522. Thus, without a contrary testamentary expression of intent, a surviving joint tenant of a bank account may be responsible for his/her proportionate share of estate tax, even though the joint tenancy funds **are not** considered assets of a decedent's probate estate. On the other hand, a probate estate asset that passes to a religious institution—like decedent's residence—bears no share of the estate tax liability because its value is entitled to deduction from the value of the gross estate for estate tax purposes [68 O.S.1991, § 808(h)] and generates no tax liability. *See Lomon v. Citizens Nat. Bank & Trust of Muskogee*, 1984 OK 68, 689 P.2d 306, 311; *In Re Davidson*, 641 P.2d at 1114.

expenses with an intention he be ultimately liable therefor.

¶ 14 Further, though nephew's affidavit attests to the "fact" that the expenses incurred, and claims and accounts paid, were valid expenses of administration and claims against the estate, such attestation is really a conclusion, rather than a fact. No evidentiary materials conclusively show: who actually arranged for decedent's funeral/burial or the reasonableness of the charges paid by nephew therefor[4] and whether all expenses apparently claimed to be estate administration expenses were actually necessary expenses beneficial to estate administration or preservation (e.g. cable television and· telephone charges at decedent's residence after her death) or other such expenses were reasonable in amount (e.g. estate tax return preparation charge).

¶ 15 In November 1998 judgment was filed denying nephew's motion; granting the SPR's counter-motion; and ruling nephew take nothing. Although in the judgment the trial judge found the bank accounts were in joint tenancy (decedent and nephew the joint tenants) and that nephew made the payments from joint tenancy funds, the trial judge, as previously noted, ruled nephew voluntarily paid the debts/expenses, without right or duty and he was, thus, unentitled to reimbursement in any amount. As also previously noted, the COCA affirmed on the basis the record sufficiently showed nephew made the payments as a volunteer with no protectable interest in the estate. These rulings were in error.

## PART III. PRELIMINARY MATTERS.
### A. THE JOINT TENANCY FUNDS.

¶ 16 We view the summary judgment record—as did the COCA—to be uncontroverted as to the fact the bank accounts were held in joint tenancy with right of survivorship. This recognition is important because a surviving joint tenant becomes sole owner of the funds in a joint tenancy account upon the death of the other joint tenant. *City National Bank & Trust Co. v. Conrad,* 1966 OK 132, 416 P.2d 942; *Barton v. Hooker,* 1955 OK 78, 283 P.2d 514. In other words, joint tenancy funds **do not** become part of a deceased joint tenant's estate, but become the sole property of the surviving joint tenant. *Id.; See generally Matter of Estate of Steen,* 1992 OK CIV APP 26, 909 P.2d 63, approved for publication by Oklahoma Supreme Court in *Estate of Steen v. Epperson,* 1995 OK 86, 909 P.2d 62.[5]

¶ 17 Although the right of survivorship may be attacked/rebutted by relevant evidence showing an account labeled as a joint tenancy account was in reality created with the intention the survivor was to hold the funds in trust for others [*Branham v. Smith,* 1992 OK CIV APP 141, 852 P.2d 761—investment account] or showing some fraudulent conduct on the part of one of the supposed joint tenants which would undercut a finding of an intelligent intention to create

---

4. As noted, evidentiary materials do not show who arranged for decedent's funeral/burial, although nephew indicates in his certiorari petition he arranged for his aunt's funeral. We cannot take the certiorari petition indication as an undisputed fact, however, because the record simply does not show the circumstances surrounding the arrangements for decedent's funeral/burial.

5. The creation of a valid joint tenancy establishes a present estate in which the joint tenants are seised of the whole. *Clovis v. Clovis,* 1969 OK 170, 460 P.2d 878, 881. The principle characteristic of the tenancy is a right of survivorship. *Id.* This survivorship right does not pass anything from a deceased joint tenant to the survivor upon the death of the former since, by the very nature of the tenancy, title of the joint tenant who dies first terminates at death and vests *eo instanti* (i.e.immediately) in the survivor. *Id.* Because joint tenants are seised of the whole while alive, the survivor's interest is simply a continuation, or extension, of his/her existing interest. *Id.* This Court has recognized a bank deposit may be so arranged and handled that co-depositors may be joint owners thereof during their mutual lives, and upon the death of one joint owner the survivor will take the whole thereof. *Guilinger v. Guilinger,* 1967 OK 199, 433 P.2d 946, 948. The controlling question is whether the person creating the account intentionally and intelligently created a condition embracing the essential elements of joint ownership and survivorship. *Id.; City National Bank & Trust Co. v. Conrad,* 1966 OK 132, 416 P.2d 942, 945. Also, a joint tenancy with right of survivorship may be created in a bank account notwithstanding the fact that the source of the funds is from only one of the joint tenants. *Id.* at 944–945; *Hadwiger v. Melkus,* 1961 OK 219, 365 P.2d 726.

a joint tenancy [*Clovis v. Clovis*, 1969 OK 170, 460 P.2d 878—successful attack on joint tenancy warranty deed based on fraud of putative joint tenant], the SPR presented no evidentiary materials attacking the legitimacy of the joint tenancy status of the four accounts involved here on either basis, or any other.[6] Simply, the SPR's apparent arguments in the trial court that the funds in the accounts continued to retain their character as decedent's funds even after her death, and that the funds should be considered probate estate assets, were made without evidentiary support and seem to evidence a misunderstanding of joint tenancy law. As **PART II** notes, nephew's affidavit unequivocally attests the accounts were held in joint tenancy and that he was the surviving joint tenant. The Oklahoma estate tax return also indicates nephew was the joint owner of the accounts. The SPR presented no evidentiary materials that tended to undercut nephew's attestations. Our review of the summary judgment record reveals there is nothing in it that supports any conclusion other than the accounts were, in fact, held in valid joint tenancy status both before and on the date of decedent's death. Thus, to the extent nephew paid the debts/expenses listed in **PART II** with funds from one or more of the accounts, as far as this summary judgment record is concerned, the payments were made with nephew's funds, not those of decedent or her estate.[7]

## B. FUNDING SOURCE(S) FOR PAYMENT OF DEBTS AND COSTS OF ADMINISTRATION.

¶18 In essence, the SPR is of the view decedent intended her home to go to the Church free of any of decedent's debts/estate expenses and, apparently, that she intended her debts/estate expenses be paid from the joint tenancy funds. Under this summary judgment record two main problems exist with the SPR's contentions. First, because under the summary judgment record the bank accounts were held in joint tenancy and, thus, nephew became sole owner of all funds in the accounts immediately upon decedent's death, the bank account funds were not responsible for payment of decedent's debts or estate administration costs. In other words, the joint tenancy funds, under this record, simply cannot be considered a part of decedent's estate or liable for her debts/estate expenses.[8]

¶19 Second, even if it be assumed decedent had an intent to pass her home via her will free of any of her debts/estate expenses, because the record contains evidentiary materials that show an apparent **insufficiency** of other **estate** property or funds to pay the debts/expenses claimed sub-

---

6. The lack of any such attack contrasts with the situation presented in *Guilinger v. Guilinger,* note 5, *supra.* There, this Court affirmed a trial court decision—entered after an apparent non-jury trial—that held a "joint" bank account was not intended to be a joint tenancy account with right of survivorship where evidence sufficiently showed: 1) the account was changed to a "joint" account by decedent (the account-holders were decedent and a son) so her son would have access to the account's funds to pay for transport of decedent's body back to Oklahoma for burial in case she died out-of-state; and 2) mother/decedent intended any remaining account funds be divided among her four children. *Guilinger* also makes clear: 1) the mere fact a person deposits money so it may be withdrawn by that person and others is not in itself sufficient to create such a joint interest in the deposit as to comprehend the right of survivorship and 2) an interested party may successfully attack an assertion a "joint" bank account was intended to be a true joint tenancy account.

7. Even though the summary judgment record is uncontroverted as to the joint tenancy status of the accounts, it would have been more evidential for nephew to have submitted the signature card(s) and any accompanying written agreements/documentation creating the accounts. No signature cards and/or accompanying documentation are contained in the record. Such signature cards and any accompanying documentation are generally used to show the joint tenancy status of a bank account. *See e. g. Hadwiger v. Melkus,* note 5, *supra; Barton v. Hooker,* 1955 OK 78, 283 P.2d 514. The record suggests written documentation does exist, and that it was provided to an attorney previously representing the SPR in this matter. See March 7, 1996 letter from Melinda J. Martin, Attorney at Law to Russell Cobb, Esq., attached to the SPR's September 23, 1997 amended response/counter-motion for summary judgment.

8. Liability for estate taxes, as explained in note 3, *supra,* is different and joint tenancy property may bear an appropriate share of estate tax liability.

ject to reimbursement by nephew, such an intent may be impossible to fully honor under our law. This is shown by 58 O.S.1991, § 471, which provides:

> The estate, real and personal, given by will to legatees or devisees, is liable for the debts, expenses of administration, and family expenses, in proportion to the value or amount of the several devises, or legacies, **but specific devises or legacies are exempt from such liability if it appears to the court necessary to carry into effect the intention of the testator, and there is other sufficient estate.** (emphasis added)

As shown by § 471, even though specific devises are exempt from the payment of debts/estate expenses when necessary to effectuate the intention of a testator, the exemption applies only if there is other sufficient estate to pay valid debts, expenses, etc. Where all primary funds and assets preceding in order of resort for payment of debts have been exhausted, and only specific devises and legacies remain in the estate, the same shall abate and contribute ratably, *inter se*, to satisfy remaining liabilities of the estate. *Tapp v. Mitchell*, 1960 OK 135, 352 P.2d 900, 901 *First Syllabus.*

¶ 20 The order by which a decedent's property is to be resorted to for the payment of debts/estate expenses referred to in *Tapp* is primarily controlled by 84 O.S.1991, § 3. *See generally In re Fletcher's Estate*, 1957 OK 7, 308 P.2d 304. Section 3 provides:

> The property of a testator, except as otherwise especially provided in this code and in the chapter on civil procedure must be resorted to for the payment of debts in the following order:
>
> 1. The property which is expressly appropriated by the will for the payment of the debts.
>
> 2. Property not disposed of by the will.
>
> 3. **Property which is devised or bequeathed to a residuary legatee.**
>
> 4. Property which is not specifically devised or bequeathed, and,
>
> 5. **All other property ratably.** Before any debts are paid, the expenses of the administration and the allowance to the family must be paid or provided for. (emphasis added)

Under § 3, the order of priority here would be the residuary estate, and if exhausted, then decedent's residence, because that is the only other asset shown by the record to be part of her estate.

¶ 21 We now examine whether the COCA correctly affirmed the summary judgment in favor of the SPR on the basis the record sufficiently showed nephew paid the debts/estate expenses voluntarily, without right or duty and had no protectable interest in the estate.

**PART IV. THE RECORD IS NOT FREE OF MATERIAL FACTUAL QUESTIONS ON THE ISSUE OF NEPHEW'S STATUS AS A VOLUNTEER OR OFFICIOUS INTERMEDDLER AND THE RECORD DOES NOT SHOW NEPHEW WAS WITHOUT A PROTECTABLE INTEREST IN THE ESTATE.**

**A. FUNERAL EXPENSES.**

¶ 22 The general rule as to reimbursement for the payment of funeral expenses by a third person other than the personal representative of a decedent's estate is stated in an annotation, *Subrogation or reimbursement, from decedent's estate, of persons other than personal representative or surviving spouse paying funeral expenses*, 35 A.L.R.2d 1399, 1400 (1954):

> While there are exceptions to the rule, at least under certain circumstances, it is quite generally recognized that a third person, other than the personal representative or surviving spouse, paying the funeral expenses of a decedent, is entitled to reimbursement therefor from the estate, provided he did not act officiously, as a volunteer or meddler.

The rationale behind the general rule is that it is seemly and proper, indeed sometimes necessary, that a decent burial be given to a person's body within a very short period of time after death; oftentimes the funeral/burial expenses must be incurred even before the appointment of an executor or estate administrator. *In re Kemmerrer*, 114 Cal.App.2d 810, 251 P.2d 345, 346 (Dist.Ct.App.1952)

quoting from *Golden Gate Undertaking Co. v. Taylor*, 168 Cal. 94, 141 P. 922, 924 (1914).

¶ 23 Over one hundred (100) years ago the Alabama Supreme Court said the following in regard to funeral expense reimbursement:

> Funeral expenses, says Lord Coke, according to the degree and quality of the deceased, at common law were allowed of the goods of the deceased, before any debt or duty whatever, and his burial was the first duty of an executor. If there was no executor, or if he was unknown, or not at hand, a friend or a stranger may attend to the duty, and bury the deceased in a manner suitable to the estate he leaves behind him; and the necessary expenses must be repaid him by the personal representative, having assets, though he neither ordered, nor had knowledge of the expenditure..... The amount of such expenses, when paid by a friend or relative, is regarded as money paid on request of the personal representative; and the law raises a promise to repay it, so far as he has assets. (citations omitted)

*Gayle's Adm'r v. Johnston*, 72 Ala. 254, 257–258 (1882); *Accord Phillips v. First Nat. Bank of Bessemer*, 208 Ala. 589, 94 So. 801 (1922). Concerning a third person's potential entitlement to reimbursement from a decedent's estate for payment of funeral expenses, the Iowa Supreme Court said in a similar vein:

> There may be a real necessity, there may be a relationship, perhaps not of the blood but of friendship or business, there may be an absence of relatives able or willing to act, which justifies arrangements for a funeral service being made by someone who, under different circumstances, would be a mere officious intermeddler. Each case must turn upon the facts shown.

*In re Kneebs' Estate*, 246 Iowa 1053, 70 N.W.2d 539, 543 (1955). Summed up, both the Alabama and Iowa Supreme Courts recognize that even a friend or stranger may be entitled to reimbursement in a proper situation; in other words, as to funeral expenses, reimbursement is not unalterably tied to the paying party having an interest in the estate to protect.

¶ 24 That a person other than the personal representative may be entitled to reimbursement from a decedent's estate when out of necessity or valid reason the person steps in to pay for funeral/burial expenses, is bottomed on the doctrine of equitable subrogation. *In re Estate of Boyd*, 972 P.2d 1075, 1077 (Colo.Ct.App.1998). Equitable subrogation is an equitable principle by which, based on the facts and circumstances in a particular case, the responsibility for an obligation's discharge should ultimately be placed upon the person or entity who, in good conscience, ought to pay. *Travelers Ins. Companies v. Dickey*, 1990 OK 109, 799 P.2d 625, 627 f. n. 1. Thus, a person who pays a decedent's funeral expense, not as an officious volunteer or meddler, but out of necessity of occasion, is entitled to reimbursement from the deceased's estate, provided the bill is reasonable. *Osborne v. Osborne*, 114 Ohio App.3d 412, 683 N.E.2d 365, 367 (1996); *See also Johnson v. Hailey*, 204 Tenn. 664, 325 S.W.2d 255 (1959).

¶ 25 Officious volunteers are those who introduce themselves into matters which do not concern them and do something which they are neither legally nor ethically bound to do. *Barnett v. Barnett*, 1996 OK 60, 917 P.2d 473, 476 fn. 7. An example of an officious intermeddler is found in the case of *Guilliume v. McCulloch*, 173 Wash. 694, 24 P.2d 93 (1933) where a third party was found unentitled to reimbursement for paying funeral expenses in a situation where, despite the fact the next of kin had already made funeral arrangements, the third party defiantly took control of the funeral. Another example where reimbursement would not be appropriate would be where it is sufficiently shown a third party pays under circumstances evidencing the third party's intent to incur the ultimate liability therefor. *In re Knast's Estate*, 66 Pa. D. & C. 383 (Pa. Orph.Ct.1949)(where evidence showed sister of decedent took out life insurance policy on decedent's life with intent it be used to pay funeral expenses and only sought reimbursement from estate when she learned decedent had a solvent estate, reimbursement not allowed).

¶ 26 Our own statutes generally acknowledge that the body of a human being must be decently buried within a reasonable time after death. 21 O.S.1991, § 1152.[9] 58 O.S.1991, § 591 [10] and § 594 [11] further make plain that funeral expenses have priority over most other obligations of an estate, generally being subordinated only to valid expenses of estate administration. *Tims Funeral Home v. Phillips*, 1972 OK 121, 501 P.2d 493. Although the purpose of § 591 has been recognized to be establishment of priority of legal and enforceable debts against the estate of a deceased person and not to create estate liability [*See Brogden v. Baugh*, 1936 OK 244, 55 P.2d 994], in our opinion, both §§ 591 and 594 support the view, reasonable funeral expenses are **normally** seen as a proper charge against estate assets.

¶ 27 Oklahoma jurisprudence also provides that funeral expenses of a decedent are ordinarily to be a charge against a decedent's estate. *See e.g. In re Atkinson's Estate*, 1954 OK 285, 275 P.2d 983; *Gibbs v. Barksdale*, 1947 OK 233, 184 P.2d 755; *In re Wagner's Estate*, 1936 OK 724, 62 P.2d 1186, 1191–1192; *In re Wilson's Estate*, 1932 OK 701, 15 P.2d 825. A leading treatise on Oklahoma probate law has also recognized: "[b]ecause burial is indispensable and somebody must take responsibility for having it attended to, the law is generally understood to accord payment from the estate on an implied promise on the part of the executor or administrator to pay it." 1 R. ROBERT HUFF, OKLAHOMA PROBATE LAW AND PRACTICE § 18.13 pg. 294 (3d ed.1995). We must also state, we are in agreement with the following recitation of a California court as to the rule that reimbursement from a decedent's estate is ordinarily appropriate:

> Any other policy would penalize those who step forward with financial assistance in the hour of need, and who do so with no hope of personal gain but with the highest of motives, based upon the real philosophy of human relations. The law countenances no such unjust and inequitable policy.

*In re Kemmerrer, supra*, 251 P.2d at 348. Of course, exceptions would be where a testator properly directs or plans otherwise, where the third person paying actually intends to incur the ultimate responsibility, or where the factual record truly supports a determination the third person was officiously meddling into a matter that did not concern him/her.

¶ 28 Although the instant record does not conclusively show nephew arranged for his aunt's funeral/burial (nephew only so alleges in his certiorari petition), the summary judgment evidentiary materials plainly raise, at least, an inference he did so. Further, the evidentiary materials clearly indicate decedent had no husband or children to attend to the necessity of a proper funer-

---

9. 21 O.S.1991, § 1152 provides: "[e]xcept in the cases in which a right to dissect a dead body is expressly conferred by law, every dead body of a human being must be decently buried within a reasonable time after the death."

10. 58 O.S.1991, § 591 provides:
The debts of the estate must be paid in the following order:
1. Funeral expenses.
2. The expenses of the last sickness.
3. Funds necessary for the support of the family and allowed by the court pursuant to the provisions of this chapter.
4. Taxes to the United States or the state, county, or city.
5. Debts having preference under the laws of the United States and of this state.
6. Judgments rendered against the decedent in his lifetime, which are liens upon his property and mortgages in the order of their date.
7. Demands or claims which are presented to the executor or administrator for an allowance or proved within two (2) months after the first publication of notice to creditors.
8. All other demands against the estate except those set forth in paragraph 9 of this section.
9. Interest resulting from the extension of time for payment of federal estate or transfer taxes. Such interest shall be a cost of administration but shall not be deductible in arriving at the Oklahoma net taxable estate under Section 808(g) of Title 68 [68–808].

11. 58 O.S.1991, § 594 provides:
The executor or administrator, as soon as he has sufficient funds in his hands, must pay the funeral expenses, and the expenses of the last sickness, and the allowance made to the family of the decedent. He may retain in his hands the necessary expenses of administration, but he is not obliged to pay any other debt or any legacy until, as prescribed in this chapter, the payment has been ordered by the court.

al/burial and that the PR, even if he was in a position at the time of decedent's death to pay for a proper funeral and interment, took no steps to do so. Very simply, the summary judgment record does not conclusively show nephew arranged or paid for the funeral/burial with an intent he incur the ultimate liability, or that he introduced himself into the funeral/burial (either as to arrangement or payment) as an officious volunteer or intermeddler. In that the summary judgment record does not show nephew was a mere volunteer or intermeddler, it was error for the trial judge and the COCA to have completely foreclosed his claim to some reimbursement for payment of decedent's funeral/burial expenses.[12]

## B. PROTECTABLE INTEREST IN THE ESTATE.

¶ 29 The COCA ruled nephew had no protectable interest in the estate and, therefore, it was not error for the trial judge to treat him as a volunteer unentitled to reimbursement in any amount. This ruling by the COCA is plainly inconsistent with the summary judgment record. Nephew was the named residuary beneficiary under the will and had an interest in the residuary estate. Notwithstanding the apparent facts he took possession of, at least, some of the assets of the residuary estate, and he may have had a part in transferring other residuary estate assets to others, nephew's status as the residuary beneficiary gave him a protectable interest in the estate.

¶ 30 Generally, where a person interested in an estate pays a debt of the estate, he is subrogated to the claim of the creditor against the estate to the extent to which he or his interest is not primarily liable. 83 C.J.S. *Subrogation* § 15 (1953). Section 15, pp. 614–616, provides in pertinent part:

As a general rule, where a person interested in the administration of an estate as heir, devisee, legatee, or surviving spouse pays, in order to protect his interest or benefit the estate, or has his interest taken for, or applied to the satisfaction of, a debt or claim against the estate for which the general estate, or the interests of others, are primarily liable either in whole or in part, he will be subrogated to the rights of the creditor whose debt is thus paid, to the extent that may be necessary to reimburse him for the amount for which he or his interest is not primarily responsible; but to no greater extent. In no case can a person, claiming by way of subrogation against an estate, stand in a better position than the person whose rights he claims to be subrogated.

\* \* \*

[However], if the facts and circumstances show definitely that at the time of payment the right of subrogation was not intended to be exercised, and could not be exercised without injustice to others, no such right will be held to exist. (footnotes omitted)

*See also Chamness v. Chamness' Estate,* 53 Ind.App. 225, 101 N.E. 323 (1913)(an heir having a personal interest in estate may be entitled to be subrogated to right of creditor where, with knowledge and consent of other heirs, he pays a note of decedent; subrogation may also be applicable when heir pays costs of administration); *Owen Creek Presbyterian Church v. Taggart,* 44 Ind.App. 393, 89 N.E. 406, 408 (1909)(when heir, devisee or legatee pays debts against testator for purpose of protecting his/her interest in the property of decedent, such payments are not considered voluntary and equity will keep debt alive for protection of person making

---

12. Our ruling should not be taken to express a view as to the reasonableness of the funeral/burial expenses paid by nephew. That is a matter to be taken up by the trial court on remand upon proper presentation by the parties. What is a reasonable amount for a decedent's funeral/interment should correspond to the circumstances and social condition of the decedent, including his/her station in life and value of his/her estate. *Wright v. Big Hill Trading Co.,* 1925 OK 837, 115

Okla. 82, 241 P. 811 *Syllabus by the Court; see also In re Allen's Estate,* 175 Wash. 65, 26 P.2d 396, 398 (1933); *Calvin F. Feutz Funeral Home, Inc. v. Werner's Estate,* 417 S.W.2d 25, 28 (Mo.Ct.App.1967)(reasonableness of amount for funeral expense determined by considering whether price charged is reasonable market value in community and whether amount is commensurate with value of decedent's estate and with decedent's position in life).

payment.); *Suydam v. Voorhees,* 58 N.J.Eq. 157, 43 A. 4 *Third Syllabus* (Ch. Ct.1899) (devisee of life interest in lands of testator who pays with his own funds a debt of testator, which debt is either charged upon land by will, or payable out of land by statute, will be subrogated to creditor's right).

¶ 31 Like the situation involving payment of the funeral/burial expenses, nephew's claim to reimbursement for payment of decedent's medical bills, other debts and estate administration costs is grounded on the doctrine of equitable subrogation. The doctrine is a creature of equity intended to achieve the natural justice of placing the burden where it ought to rest. *Republic Underwriters Ins. Co. v. Fire Ins. Exchange,* 1982 OK 67, 655 P.2d 544, 547. It is unlike a fixed rule of law; instead, equitable subrogation is pliable and capable of being molded to attain justice to compel the ultimate discharge of a debt or obligation by the party who in good conscience ought to pay it. *Id.*

¶ 32 As noted in **PART III(B)**, the order of priority in regard to the source of the funds liable for payment of debts/estate expenses in the present case under the summary judgment record would be the residuary estate, and if exhausted, then decedent's residence. Because the residuary estate was primarily liable and nephew was the residuary beneficiary under decedent's will, there is, of course, a question as to the value thereof to be deducted from or offset against any ultimate amount, if any, nephew is due under his reimbursement claim. There are also factual questions under this summary judgment record concerning whether payments made by nephew were actually necessary expenses beneficial to estate administration or preservation, or other payments made by him were reasonable in amount. The answer to the ultimate question, i.e. where natural justice should place the burden of the payments made by him, is also left in doubt under this summary judgment record. These matters, and possibly other potential questions impacting the ultimate amount he may be entitled to under his reimbursement claim, are matters that must first be taken up on remand by the trial judge upon proper presentation of the parties. To dispose of this appeal we need go no farther than to recognize, the COCA erred in its affirmance of the trial court summary judgment in favor of the SPR on the basis nephew had no protectable interest in the estate. The summary judgment record shows he did have an interest in the estate and it was error for the COCA to have ruled otherwise.

**PART V. CONCLUSION.**

¶ 33 The trial judge denied nephew's motion for summary judgment and granted the SPR's counter-motion for summary judgment, essentially ruling nephew made payments for decedent's funeral/burial expenses, payment of certain expenses claimed by nephew to be costs of administration of decedent's estate, and payment of decedent's medical expenses and certain other debts of decedent, voluntarily, without right or duty and, thus, was unentitled to reimbursement in any amount. The COCA affirmed on the basis the record sufficiently showed nephew made the payments as a volunteer with no protectable interest in the estate. Both the trial court and the COCA erred. Although the summary judgment record is not sufficient to show nephew's entitlement to reimbursement for the total amount of his claim, neither does it support summary judgment in the SPR's favor. The record does not conclusively show nephew was an officious volunteer/intermeddler unentitled to any reimbursement; nor does it show a lack of protectable interest in the estate. Further, lack of a protectable interest in the estate would not automatically foreclose reimbursement for nephew's payment of reasonable funeral/burial expenses, in any event. Accordingly, the trial judge erred in granting summary judgment to the SPR and the COCA erred in affirming the judgment.

¶ 34 The Court of Civil Appeals' opinion is **VACATED;** the trial court judgment is **REVERSED;** and the matter is **REMANDED FOR FURTHER PROCEEDINGS.**

¶ 35 All Justices concur.