**CHARLES MELBOURNE & SONS, INC., Plaintiff-Appellee, v. JESSET et, Defendants-Appellants.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24943.   Decided January 15, 1960.

Clifford Bruce, for plaintiff-appellee.
Michael A. Picciano, for defendants-appellants.

## OPINION

By SKEEL, J:

This appeal comes to this court on questions of law from a judgment for the plaintiff entered in the Municipal Court of Rocky River. The plaintiff, a funeral director, at the request of Mrs. Laura Jesset, on August 5, 1955, entered into a contract with her to conduct the funeral services of her husband and to furnish the necessary material for the sum of $1,054.69. The services were performed as provided by the contract. A claim was made against the estate which was determined to be insolvent and $350.00 of the estate's assets paid on the claim as the plaintiff's share.

This action was filed against the defendant through her guardian appointed April 15, 1957. The defendant, Laura Jesset, was first adjudged incompetent in the Probate Court of Cuyahoga County after hearing on the affidavit sworn to and filed by William G. Jesset on July 10, 1940 The date of the adjudication was October 29, 1940. She was thereafter discharged from the State Hospital as improved July 31, 1944. On August 12, 1955, her son, William G. Jesset, filed a second affidavit charging mental incompetence against his mother, Laura Jesset, and upon hearing, she was again committed to Hawthornden State Hospital. The second adjudication was dated August 17, 1955. On September 16, 1955, a guardian was appointed for her estate who served until April 15, 1957, and filed his final account. The present guardian, William G. Jesset, son of Laura Jesset, was then appointed guardian of her estate and is still acting in that capacity.

From July 31, 1944, until the date the contract was signed, and from then until August 12, 1955, she was a free agent to act for herself without guardian or any other court supervision. It is also shown by the record that when the contract was signed, Laura Jesset was in the company of her two children, her son, William G. Jesset (now guardian), and her daughter, Joan Supplee, a resident of California, with whom

Laura Jesset now resides. Neither of the children suggested anything about the mental history of their mother, nor is there any suggestion that at the time the contract was signed, her conduct was anything other than normal.

The second affidavit was signed by William G. Jesset after the defendant's husband had died, certainly a most disturbing incident in the now incompetent's life, the action being taken when no member of her family was available in this community for her care or companionship except the affiant, William G. Jesset.

Two questions are present: first, is the contract with the plaintiff enforceable, that is, is the adjudication of incompetence in 1940, under the undisputed circumstances here set out, a complete defense, and second, were the services rendered by the plaintiff necessaries which the guardian of the now adjudged incompetent's estate is bound to pay.

The defendant in his brief sets up a defense of lack of jurisdiction for want of service on the plaintiff's amended petition. The record shows that the original petition described the debt as for the funeral services of the now incompetent defendant's deceased husband and that the only change in the amended petition was to characterize such services as "necessaries." Upon leave having been granted plaintiff to file its amended petition, the defendant, by stipulation, directed the answer filed to the first petition to be considered as the answer to the amended petition. Thereupon the parties stipulated the evidence upon which they relied in support of their respective contentions on the issues.

After judgment for the plaintiff, a motion for new trial was filed which did not mention the claim of the need for service on the amended petition. Such claim has been raised for the first time in this court. Aside from the fact that on the face of the record such claim is not well taken, it is now too late to raise the question in this court.

Funeral expenses of a deceased husband are the obligation of the widow, and as to her, are to be characterized as necessaries when the estate of the husband is insolvent, as is shown by the undisputed facts in this case. The public health, as well as the moral well-being of the widow, requires this to be so. The satisfaction of such a debt cannot be measured by the assets of the deceased's estate where the contract of the widow induced the expenditure of monies for the services rendered for her, and for which she agreed to pay.

It is true, as suggested by the defendant, that the amount recoverable for necessaries furnished a minor must be based on reasonable value under the circumstances and not the contract price unless such amount is less than the value determined to be reasonable, which rule has some limited application in the case of an incompetent. Whether the liability of an incompetent for necessaries would represent the only basis for recovery, without deviation, on his contracts, is not so clear. Some qualifications of the rule concerning the liability of persons said to be insane on their executed contracts is to be found in the cases. In the first place, the contract of a person non compos mentis is voidable and not void so that the party claiming disability must set up the lack of mental capacity as an affirmative defense and must assume the burden of proof on that issue.

In the case of Finch v. Goldstein, 245 N. Y., 300, 157 N. E., 146 (Ct. of Appeals, N. Y., 1927), the court had for consideration the question of whether the deed of an insane person having been summarily committed to an asylum prior to its execution was void, and whether the insane person's committee could enforce the provisions of the mortgage back. The facts in the case show that on September 16, 1920, Finch was determined to be mentally deranged and committed to the Hudson River State Hospital for the Insane. While there, to the knowledge of the defendant, Goldstein, he executed a deed of a farm, part of the consideration of which was a mortgage back to the incompetent. Thereafter, a committee was appointed for the incompetent and foreclosure brought on the mortgage. The first and third paragraphs of the headnotes of the North Eastern Reporter provide:

"1. Deed made by one while confined in the state hospital under a summary commitment by the county judge * * *, and before the appointment of a committee for his person and property * * *, was voidable only, and not void, and the committee on ratifying the conveyance was entitled to foreclose the purchase-money mortgage.

"3. A lunatic retains exclusive possession and control of his property after his commitment to the state hospital by the county judge, * * * until such time as a committee to take possession of his property may be appointed, * * *."

The answer in this case, denying all material allegations of the petition prejudicial to the defendant, was in accord with §2309.20 R. C. However, that does not relieve the defendant from the burden of proving his affirmative defenses on the issues which was not done in this case. In the second place, courts have departed from the view that contracts with persons of unsound mind are not enforceable in all events. Where the other party to a contract is ignorant on the lack of mental capacity of the party he is dealing with, and the transaction was fair, and no advantage was taken of the incompetent, and he has received the full benefits of the transaction and cannot put the other contracting party in status quo, such contract may be enforced against the incompetent party. Williston in his single volume work on Sales (1909) paragraph 33, page 36, states: "In the leading case of Molton v. Camroux, (2 Ex. 487; 4 Ex. 17), the rule was stated 'The modern cases show that when that state of mind was unknown to the other contracting party, and no advantage was taken of the lunatic, the defense cannot prevail, especially where the contract is not merely executory but executed in the whole or in part and the parties cannot be restored altogether to their original positions.'" And on pages 37 and 38. "In this country the weight of authority certainly supports the rule quoted above from Molton v. Camroux. * * * So negotiable paper executed by a lunatic is binding in the hands of an innocent holder for value, if the lunatic received a proper consideration therefor." See Hosler v. Beard, 54 Oh St 398, 43 N. E. 1040, 35 L. R. A. 161, 56 Am. St. Rep. 720 (1896). In the case of Pichel v. Fair Store Co., 29 Oh Ap 322, 163 N. E. 511, the court said:

"1. Where contract has been entered into with insane person in good faith, without knowledge of insanity, and for fair and adequate

consideration, and consideration that passed to insane person cannot be returned, contract can be enforced in favor of the other party.

"2. Where insane person entered into contract to pay certain sum in consideration for plaintiff's dismissal of suit on an account for necessaries, and plaintiff acted in good faith, and did not know of insanity, contract was enforceable against deceased insane person's estate, where action was barred on the original account, and thus it was impossible to restore to plaintiff consideration received from it by insane person."

In the case of Middleton, Trustee, v. Bradstreet, 11 Abs 413, the first paragraph of the headnotes provides:

"1. A contract with an insane person will not be set aside when entered in good faith and without notice of the infirmity unless the parties can be restored to status quo."

Under the undisputed facts, as stipulated, not only was the plaintiff completely unaware of any lack of mental capacity on the part of the now supposed incompetent defendant but the conduct of the children, who were fully cognizant of their mother's past history, and who were with her when the funeral was contracted for, did not indicate any possible lack of mental capacity on her part.

This presents the final question as to whether or not the adjudication of mental incompetency on the public records of the Probate Court in 1940, which records also show that she was discharged from the state mental hospital as "improved" in 1944, could charge the plaintiff with knowledge of her then mental condition. In considering the facts, one fact must be kept clearly in mind. Upon the first adjudication of mental incapacity in 1940, the court did not appoint a guardian either of her person or her estate. Upon her release in 1944, until after the death of her husband in 1955, she lived with her husband with no suggestion in the evidence of other than a normal life. It is significant that, as shown by the record, when she was again committed in 1955, a new affidavit was filed by her son (the first affidavit having been signed by her husband) and she was not returned under the first commitment from which the guardian now claims she was not fully released.

Referring again to Williston on Sales, supra, at page 42, paragraph 36, after stating that the guardian when appointed must act for his ward, he, the guardian, being vested with the control of the ward's property, and stating further that the guardian alone is capable of dealing with the ward's property, it is stated that any attempt of the ward to contract during guardianship is absolutely void. The author then says "The contrary has, however, been held where the lunatic had regained his reason and the guardianship had been allowed to fall in disuse although not legally terminated." Then, after stating that some cases stress whether lunacy has been found by inquisition, and if so, his transactions are void, the author then says "The truth seems to be, however, that the finding merely establishes the fact of insanity, and the legal effect of the transaction is the same as it would be in any case of proved insanity. It is the appointment of a guardian which works the change in the legal power of a lunatic to act for himself."

In the case of Weeks et al v. Reliance Fertilizer Co., 20 Ga. App. 498, 93 S. E. 152 (1917), the second syllabus provides:

"2. After the fact of insanity has been established by a court of competent jurisdiction in this state, and after the affairs of the insane person have been vested in a guardian, the power of the ward to contract, while such judgment and appointment remain of force, is gone, but where no guardian has been appointed and a contract is made by one engaged in business in his own behalf, who has been previously adjudged insane, the validity of the contract depends upon whether or not he was actually insane at the time the contract was entered into, and such a previous adjudication furnishes prima facie evidence that such condition continued to exist. The presumption so raised may be rebutted by proof."

The evidence in the instant case clearly rebuts the continuation of the so-called prima facie presention suggested as the law of the Weeks case. Mrs. Jesset for eleven years was about her neighborhood and circle of friends without claims of incompetency being suggested or that her improvement, which was sufficient to cause her discharge from the institution, did not continue. When recommitment was made after the death of her husband, it was by a new inquest and when the contract was made for the funeral, the man who signed the affidavit of incompetency was with his mother when she signed the contract. Certainly he must have thought she was sufficiently competent to enter into the contract for he did not speak out or suggest that his mother could not be held liable under the funeral contract by reason of insufficient mental capacity formerly established by adjudication or otherwise. We certainly would not want to conclude that William G. Jesset stood mute, expecting thereby to defeat the right of the undertaker to be paid what was agreed to for the burial of his father.

Also in the case of Summer v. Boyd, 208 Ga. 207, 66 S. E. 2d 51 (1951), in the third paragraph of the headnotes of the South Eastern Reporter, it is said:

"3. Where one has been adjudged insane by court of competent jurisdiction, but no guardian was appointed, validity of such person's contracts depends upon his sanity at time of execution."

The conclusion must be that the plaintiff dealt with the defendant honestly, without knowledge of any lack of mental capacity, or any indication that such was the fact, that full value was furnished (this question not being denied or the denial supported by evidence), and that any presumption that might be derived from the adjudication of mental incompetency adjudged in 1940, being completely dispelled, that under the stipulated facts of the case, the defendant is liable on her contract with the plaintiff. It must also be concluded that the services of the plaintiff were necessaries, and there being no attempt to show that the charges were unreasonable or unfair, the incompetent's estate is liable for the balance due for such services.

The judgment of the trial court is, therefore, affirmed.

HURD, PJ, KOVACHY, J, concur.