IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 1, 2001 Session

## ESTATE OF NAN FRANCIS v. KARL FRANCIS

**Appeal from the Chancery Court for Cheatham County**
**No. 9193      Leonard Martin, Chancellor**

---

**No. M2000-01110-COA-R3-CV - Filed June 18, 2001**

---

This appeal involves a dispute between a widow and her stepson regarding the disposition of a jointly owned certificate of deposit. After her stepson liquidated the certificate of deposit and used the proceeds to obtain another certificate of deposit in his own name, the widow filed suit in the Chancery Court for Cheatham County seeking her share of the funds. The stepson filed a counterclaim, alleging that the widow had contributed to his father's death by failing to provide needed medical care and seeking reimbursement for his father's funeral expenses. The widow died while the suit was pending, and her estate was substituted as a party. After dismissing the stepson's wrongful death claim, the trial court determined that the widow's estate and her stepson should receive equal shares of the proceeds of the account remaining after the payment of a joint debt of the widow's husband and her stepson and that the widow's estate should reimburse the stepson for the expenses he incurred in connection with his father's funeral. On this appeal, the widow's estate asserts that the trial court erred by ordering that the funds in the account be used to repay the joint debt and by ordering it to reimburse the stepson for his father's funeral expenses. We have determined that the trial court properly distributed the proceeds of the deposit account. However, we have also determined that the trial court erred by directing the widow's estate to reimburse the stepson for his father's funeral expenses.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part
and Reversed in Part**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Charles Galbreath, Nashville, Tennessee, for the appellant, Estate of Nan Francis.

Robert L. Perry, Jr., Ashland City, Tennessee, for the appellee, Karl Francis.

### OPINION

On February 9, 1987, Joseph G. Francis used $100,000 of his own funds to obtain a certificate of deposit from the Cheatham State Bank. In addition to listing himself as the certificate's owner, Mr. Francis directed the bank to list his son, Karl Francis, as a joint owner with a right of

survivorship. Shortly thereafter, Mr. Francis used the certificate of deposit as security for a series of loans made to his son.[1] In August 1994, Mr. Francis added his wife, Nan Francis, as a joint owner of the certificate of deposit with a right of survivorship.[2] Mr. Francis periodically renewed the certificate of deposit, and the bank continued to hold it as security until Mr. Francis's death on January 2, 1997. Neither Ms. Francis nor Karl Francis ever contributed funds to this certificate of deposit.

Four days after Mr. Francis's death, Karl Francis liquidated the certificate of deposit and used the proceeds to purchase a certificate of deposit in his own name.[3] He conceded later that he took these steps solely to prevent Ms. Francis from obtaining any of these funds. The bank continued to hold the new certificate of deposit as security for the outstanding loans. Around this same time, Karl Francis paid $5,484.60 to cover all his father's funeral expenses.

Ms. Francis filed suit in the Chancery Court for Cheatham County on July 28, 1997, seeking her share of the certificate of deposit. Karl Francis denied that she was entitled to any portion of these funds, alleged that Ms. Francis had contributed to his father's death by failing to render appropriate medical care,[4] and demanded that she reimburse him for Mr. Francis's funeral expenses. After Ms. Francis died on October 8, 1997, the trial court substituted her estate as a party to this litigation.

Following a bench trial in late September 1999, the trial court entered an order on October 12, 1999, finding that the disputed funds had been "Joe Francis' money" and that "neither Karl Francis nor Nan Francis made any contribution to the Certificate of Deposit." Accordingly, the trial court directed the parties to submit briefs "regarding the disposition of the net proceeds of the $100,000.00 Certificate of Deposit after the payment of the loan upon which said Certificate of Deposit is pledged." On December 17, 1999, after the parties had submitted their briefs, the trial court filed its opinion concluding that the disputed funds should be used to repay the bank's loan to Mr. Francis and Karl Francis and that Ms. Francis's estate and Karl Francis were entitled to equal shares of the remaining funds. The trial court also ordered Ms. Francis's estate to pay $5,484.60 to Karl Francis to reimburse him for his father's funeral expenses.[5]

---

[1] The nature and purpose of these loans is somewhat unclear. Even though the loan documents were signed only by Karl Francis, the bank apparently considered the loans to be the joint obligations of Mr. Francis and Karl Francis. The trial court found as fact that the certificate of deposit "was pledged to the issuing bank to secure a loan of Joseph Francis and Defendant at the bank."

[2] Nan Francis was not Karl Francis's mother.

[3] Even though the certificate of deposit was jointly owned, the terms of the account required only one signature to liquidate the account.

[4] The court entered an order on October 12, 1999, dismissing the wrongful death claim.

[5] The trial court filed a decree conforming to its opinion on January 30, 2000.

Ms. Francis's estate filed a motion to alter or amend the judgment requesting the trial court to order Mr. Francis's estate[6] to reimburse Karl Francis for his father's funeral expenses and to deduct only one-half of the outstanding loan balance from the proceeds of the certificate of deposit.[7] On March 16, 2000, Ms. Francis's estate moved for Tenn. R. Civ. P. 11 sanctions against Karl Francis because of its belief that Karl Francis had misled the estate and the court regarding the nature of the loans secured by the certificate of deposit. Thereafter, on April 14, 2000, Ms. Francis's estate also requested the trial court to direct Karl Francis to pay over her share of the net proceeds from the certificate of deposit. The trial court entered an order denying the estate's motion to alter or amend and striking its motion for sanctions on April 20, 2000 and, on May 30, 2000, denied the estate's motion requesting the immediate payment of the net proceeds.

Ms. Francis's estate perfected an appeal but did not provide a verbatim transcript of any of the proceedings in the trial court. Accordingly, Karl Francis's attorney presented a statement of the evidence that was approved by the trial court on July 24, 2000. Five days later, Ms. Francis's estate requested the trial court to amend the statement of the evidence by adding a document apparently prepared by the bank that calculated the estate's share of the proceeds from the certificate of deposit. Karl Francis objected to including this document in the record on the ground that it had been prepared more than six months after the trial and three months after the trial court had filed its opinion deciding the case. After conducting a hearing in late September 2000, the trial court filed an order on October 10, 2000, denying the estate's motion to add the document to the statement of the evidence.

# I.
## STANDARD OF REVIEW

We turn first to the proper standards of review. Because this is an appeal from a decision made by the trial court itself following a bench trial, the now familiar standard in Tenn. R. App. P. 13(d) governs our review. This rule contains different standards for reviewing a trial court's decisions regarding factual questions and legal questions.

With regard to a trial court's findings of fact, we will review the record de novo and will presume that the findings of fact are correct "unless the preponderance of the evidence is otherwise." We will also give great weight to a trial court's factual findings that rest on determinations of credibility. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997). However, if the trial judge has not made a specific finding of fact on a particular matter, we review the record to determine where the preponderance of the evidence lies without employing a presumption of correctness. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

---

[6]The record contains no evidence regarding whether Mr. Francis died testate or intestate, whether he had an estate, or whether an executor or administrator was ever appointed to administer whatever estate he had. We infer from this record, that the bulk of Mr. Francis's assets passed by operation of contract law at his death.

[7]While Karl Francis later characterized this portion of the estate's motion as partially "unintelligible," we presume that this request for relief was based on the premise that Mr. Francis was liable to the bank for only one-half of the joint debt. We need not address this question to decide this opinion.

Reviewing findings of fact under Tenn. R. App. P. 13(d) requires an appellate court to weigh the evidence to determine in which party's favor the weight of the aggregated evidence falls. *Coles v. Wrecker*, 2 Tenn. Cas. (Shannon) 341, 342 (1877); *Hohenberg Bros. Co. v. Missouri Pac. R.R.*, 586 S.W.2d 117, 119 (Tenn. Ct. App. 1979). There is a "reasonable probability" that a proposition is true when there is more evidence in its favor than there is against it. *Chapman v. McAdams*, 69 Tenn. 500, 506 (1878); 2 *McCormick on Evidence* § 339, at 439 (John W. Strong ed., 4th Practitioner's ed. 1992) (stating that "the existence of a contested fact is more probable than its nonexistence"). Thus, the prevailing party is the one in whose favor the evidentiary scale tips, no matter how slightly. *Bryan v. Aetna Life Ins. Co.*, 174 Tenn. 602, 611, 130 S.W.2d 85, 88 (1939); *McBee v. Bowman*, 89 Tenn. 132, 140, 14 S.W. 481, 483 (1890); *Chapman v. McAdams*, 69 Tenn. at 503.

Tenn. R. App. P. 13(d)'s presumption of correctness requires appellate courts to defer to a trial court's findings of fact. *Taylor v. Trans Aero Corp.*, 924 S.W.2d 109, 112 (Tenn. Ct. App. 1995); *Weaver v. Nelms*, 750 S.W.2d 158, 160 (Tenn. Ct. App. 1987). Because of the presumption, an appellate court is bound to leave a trial court's finding of fact undisturbed unless it determines that the aggregate weight of the evidence demonstrates that a finding of fact other than the one found by the trial court is more probably true. *Estate of Haynes v. Braden*, 835 S.W.2d 19, 20 (Tenn. Ct. App. 1992) (holding that an appellate court is bound to respect a trial court's findings if it cannot determine that the evidence preponderates otherwise). Thus, for the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect.

The presumption of correctness in Tenn. R. App. P. 13(d) applies only to findings of fact, not to conclusions of law. Accordingly, appellate courts review a trial court's resolution of legal issues without a presumption of correctness and reach their own independent conclusions regarding these issues. *Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 367 (Tenn. 1998); *Presley v. Bennett*, 860 S.W.2d 857, 859-60 (Tenn. 1993); *Hicks v. Cox*, 978 S.W.2d 544, 547 (Tenn. Ct. App. 1998).

Appellate courts review a trial court's finding of fact as a legal matter in one circumstance. When a finding of fact is based on undisputed evidence that can reasonably support only one conclusion, we will review that finding on appeal without Tenn. R. App. P. 13(d)'s presumption of correctness. *Hamblen County Educ. Ass'n v. Hamblen County Bd. of Educ.*, 892 S.W.2d 428, 431 (Tenn. Ct. App. 1994); *Tennessee Farmers Mut. Ins. Co. v. American Mut. Liab. Ins. Co.*, 840 S.W.2d 933, 936 (Tenn. Ct. App. 1992).

## II.
### USE OF THE CERTIFICATE OF DEPOSIT TO PAY THE BANK'S LOAN

Ms. Francis's estate first asserts that the trial court erred by deciding that the debt to Cheatham State Bank should be deducted from the proceeds of the certificate of deposit before dividing them between the parties. Instead, the estate argues that the proceeds should be divided first and that the bank should look only to Karl Francis for payment of the debt. This argument is premised on the estate's belief that the evidence does not support the trial court's finding that the debt for which the certificate of deposit was security was the joint debt of Mr. Francis and Karl

Francis. We have determined that the evidence does not preponderate against the trial court's finding that "[t]he certificated account was pledged to the issuing bank to secure a loan of Joseph Francis and . . . [Karl Francis] at the bank."

In the absence of a transcript of the proceedings in the trial court, the evidence for the purposes of this appeal consists of the statement of the evidence and the twelve exhibits admitted into evidence and considered by the trial court.[8] These materials provide little information regarding the original amount of these loans, their purpose, their repayment history, or the exact balance of the loans at the time of Mr. Francis's death.[9] However, according to the statement of the evidence, both Karl Francis and Joseph G. Scott, the president of Cheatham State Bank, testified that the certificate of deposit "was pledged to the Cheatham State Bank to secure the indebtedness of Joseph G. Francis and Karl Francis payable to the bank." Mr. Scott also testified the certificate of deposit "has thereafter been continuously pledged to secure the indebtedness and renewals thereof." This testimony provides a sufficient evidentiary basis for the trial court's finding that the loans at the Cheatham State Bank were joint obligations of Mr. Francis and Karl Francis.

Based on its finding that the Cheatham State Bank loans were joint obligations of Mr. Francis and Karl Francis, the trial court decided that the jointly owned certificate of deposit used to secure these loans should be used to repay the bank and that the remaining funds should be divided equally between Ms. Francis and Karl Francis. This conclusion is amply supported by the evidence and is consistent with Mr. Francis's apparent intent that both his wife and son should share in the proceeds of this account upon his death.[10]

### III.
### MR. FRANCIS'S FUNERAL EXPENSES

Ms. Francis's estate also takes issue with the trial court's decision requiring Ms. Francis to pay Karl Francis $5,484.60 to reimburse him for the cost of Mr. Francis's funeral. The estate insists that Ms. Francis should not have been found to be personally liable to Karl Francis for these expenses because they should have been paid by Mr. Francis's "solvent estate." We find no merit to this argument because the record contains no evidence that Mr. Francis left behind a solvent

---

[8]None of the account information attached to Ms. Francis's estate's March 16, 2000 motion for sanctions was admitted as evidence during the September 29, 1999 hearing. Because these materials were not properly admitted as evidence during the September hearing or included in the record as part of a proper Tenn. R. Civ. P. 59 motion, we cannot consider them in conjunction with our inquiry into whether the evidence preponderates against the trial court's finding that the loans to Cheatham State Bank were the joint debts of Mr. Francis and Karl Francis.

[9]Even though Mr. Francis and Karl Francis may have started borrowing from Cheatham State Bank in 1987, the exhibits included with the statement of the evidence indicate that Karl Francis may have used the proceeds from a loan or a renewal of a loan in 1990 to acquire stock in Ryan's Family Steak Houses, Inc. which was conveyed to Mr. Francis and his wife.

[10]We glean this intent from the undisputed fact that Mr. Francis instructed the bank to include both Ms. Francis and Karl Francis as owners of the certificate of deposit with rights of survivorship.

estate. However, we have determined that the judgment for Karl Francis cannot stand because he failed to proved all the necessary elements of his claim for reimbursement.

Issues regarding the responsibility for paying a decedent's funeral expenses implicate common-law and statutory principles. Resolving these issues is heavily fact-dependent. Thus, determining the ultimate responsibility for paying a decedent's funeral expenses requires ascertaining (a) the decedent's marital status at the time of his or her death, (b) whether the decedent died testate or intestate, (c) the provisions in the decedent's will for the payment of funeral expenses if the decedent died testate, (d) the solvency of the decedent's estate, (e) whether the funeral expenses were pre-paid or covered by insurance, (f) the reasonableness of the funeral expenses in light of the decedent's station in life, and (g) the authority of the person actually procuring the funeral services to bind the decedent's estate.

The record in this case contains none of this information. Whether it is due to the inadequacy of the statement of the evidence or the oversight of counsel in presenting their cases, the only facts we can glean from this record relevant to the responsibility for paying Mr. Francis's funeral expenses are (1) that Mr. Francis died on January 2, 1997, (2) that Mr. Francis was survived by a wife and a son from a previous marriage, and (3) that Mr. Francis's son paid $5,484.60 for his father's funeral. The record provides no insight regarding who actually made the funeral arrangements, the terms of the contract with the funeral director, the reasons why Karl Francis paid for his father's funeral, Karl Francis's expectation that he would be reimbursed, or the status of Mr. Francis's marriage when he died.

The current, expanded version of the common-law necessaries doctrine provides a legal basis for requiring Ms. Francis to reimburse Karl Francis for Mr. Francis's funeral expenses.[11] Early common law imposed upon a husband a legal duty to provide his wife with the necessaries of life according to their station. *State v. Dixon*, 138 Tenn. 195, 198, 196 S.W. 486, 486 (1917). Included among these necessaries were the wife's medical expenses as well has her funeral expenses. *Simpson v. Drake*, 150 Tenn. 84, 86, 262 S.W. 41, 49 (1923); *St. Joseph Hosp. v. Pinson*, Shelby Law No. 65, 1986 WL 2576, at *1 (Tenn. Ct. App. Feb. 28, 1986) (No Tenn. R. App. P. 11 application filed)*; see also Ison v. Schettino*, 199 S.E.2d 89, 94 (Ga. Ct. App. 1973); *Charles Melbourne & Sons, Inc. v. Jessett*, 163 N.E.2d 773, 775 (Ohio Ct. App. 1960); *In re Estate of Nicholas*, 107 S.E.2d 53, 55 (W. Va. 1959). Thus, unless a wife's will or a statute provided to the contrary, the surviving husband was primarily liable for his wife's funeral expenses.

---

[11]We have excluded the possibility that Ms. Francis agreed that Karl Francis would be reimbursed for his father's medical expenses because Karl Francis did not allege the existence of such an agreement in his counterclaim. He simply asserted that Ms. Francis had "consistently refused to pay the necessary and reasonable funeral expenses of her husband." In her answer to Karl Francis's counterclaim, Ms. Francis admitted that she did not pay for Mr. Francis's funeral expenses but alleged that she did not do so because Karl Francis had prevented her from arranging for the type of funeral that her husband had requested. The record contains no evidence substantiating the factual allegations of either Karl Francis or Ms. Francis.

Until relatively recent times, the common law did not impose a similar support obligation on a wife. For outmoded, chauvinistic reasons, the common law absolved the wife of responsibility for providing necessaries for her husband. This gender-based dichotomy vanished in 1983 when the Tennessee Supreme Court expanded the common-law necessaries doctrine to impose mutual support obligations on both husbands and wives. *Kilbourne v. Hanzelik*, 648 S.W.2d 932, 934 (Tenn. 1983); *Baptist Mem'l Hosp. v. Durden*, No. 02A01-9411-CV-00260, 1995 WL 593076, at *1 (Tenn. Ct. App. Oct. 10, 1995), *perm. app. granted* (Mar. 25, 1996), *app. dismissed by stipulation* (Tenn. Apr. 18, 1996). Thus, in Tennessee, a surviving spouse is responsible for providing for the necessaries of his or her deceased spouse, including funeral expenses, if they are not paid by the deceased spouse's estate. *See Outpatient Diagnostic Ctr. v. Christian*, No. 01A01-9510-CV-00467, 1997 WL 210842, at 3 n.2 (Tenn. Ct. App. Apr. 30, 1997) (No Tenn. R. App. P. 11 application filed).[12]

Karl Francis may obtain reimbursement from his step-mother for his father's funeral expenses if he provided necessaries to his father in good faith. *Davis-Turner Funeral Home v. Chaney*, 573 N.E.2d 1242, 1244 (Wilmington Mun. Ct. 1991) (requiring a widow to reimburse her step-son for her husband's funeral expenses). To prevail using this theory, Karl Francis must prove: (1) that he was justified under the circumstances in making his father's funeral arrangements,[13] (2) that the funeral expenses were reasonable in light of the decedent's station in life,[14] (3) that the decedent left behind no estate or that the decedent's estate is insufficient to pay the funeral expenses,[15] and (4) that Mr. Francis and his wife were not separated when he died or, if they were separated, that the separation was Ms. Francis's fault.[16]

---

[12]The Tennessee General Assembly has recognized the scope and operation of the current doctrine of necessaries in Tenn. Code Ann. § 47-18-805 (1995).

[13]Funeral arrangements are customarily made by the decedent's surviving spouse, other next of kin, or the executor or administrator of the decedent's estate. When these persons have not attended to the funeral arrangements, others may make the arrangements. *Johnson v. Hailey*, 204 Tenn. 664, 669-71, 325 S.W.2d 255, 257 (1959); *Nashville Trust Co. v. Carr*, 62 S.W. 204, 205-06 (Tenn. Ch. App. 1900); *Steger v. Frizzell*, 2 Tenn. Ch. Rpt. 369, 370 (Davidson Ch. 1875).

[14]*Johnson v. Hailey*, 204 Tenn. at 671, 325 S.W.2d at 256; *Wiles Bros. & Co. v. Wynne*, 139 Tenn. 397, 399, 201 S.W. 515, 515 (1918); *Fite v. Beasley*, 80 Tenn. 328, 330 (1883)*; Stephens v. Mason*, 1 Tenn. App. 246, 250 (1925).

[15]Claims against an estate for the decedent's reasonable funeral expenses have statutory priority over all other claims except claims for taxes and administration expenses. Tenn. Code Ann. § 30-2-317(a)(3) (Supp. 2000) (establishing the priority of claims in a probate proceeding); Tenn. Code Ann. § 31-2-103 (Supp. 2000) (authorizing the use of the decedent's real property to be used to pay his or her funeral expenses); Tenn. Code Ann. § 31-4-101(b)(Supp. 2000) (giving funeral expenses priority over a surviving spouse's elective share); Tenn. Code Ann. §§ 45-2-708(a)(2)(A), -3-514(a)(2)(A), -4-405(a)(2)(A) (2000) (establishing the priority of payments for funeral expenses from accounts at certain financial institutions when no executor or administrator has been appointed).

[16]The necessaries doctrine operates quite differently when the spouses are not living together. *Kilbourne v. Hanzelik*, 648 S.W.2d at 934 (Harbison, J., concurring); *Scott County Hosp. v. Carson*, Scott Law No. 35, 1989 WL 9528, at *1 (Tenn. Ct. App. Feb. 10, 1989) (No Tenn. R. App. P. 11 application filed).

The appellate record, as we have already pointed out, contains virtually no evidence relevant to Karl Francis's claim for funeral expenses or, for that matter, Ms. Francis's defense to that claim. As a general matter, we will presume that the evidence presented at trial supports the trial court's decision either when no transcript or statement of the evidence has been included in the appellate record,[17] or when the record shows that the transcript or statement of the evidence does not contain all the evidence presented to the trial judge.[18] We cannot invoke the presumption in this case because the record contains a statement of the evidence prepared by Karl Francis's lawyer and certified by the trial court that purports to be "correct in respect to those issues on appeal."

The appellate rules place the initial responsibility for preparing a statement of the evidence on the appellant. Tenn. R. App. P. 24(c). We do not know why the lawyer for Ms. Francis's estate failed to discharge this obligation or why the lawyer for Karl Francis filed a statement of the evidence when Ms. Francis's estate failed to do so.[19] Based upon the certification that the statement of the evidence is "correct," we must presume that it contains a full and accurate account of what transpired in the trial court with regard to the issues being raised on appeal. If it did not, the parties should have requested the trial court to correct it.[20]

In light of the contents of this record, we can only conclude that Karl Francis did not put on sufficient evidence to support his claim for reimbursement of his father's funeral expenses. As the claimant, he had the burden of proving each of the elements of his cause of action. *Winford v. Hawissee Apartment Complex*, 812 S.W.2d 293, 296 (Tenn. Ct. App. 1991). A claimant's failure to carry its burden of proof requires the claimant to shoulder the loss. *Howard v. Howard*, 991 S.W.2d 251, 255 (Tenn. Ct. App. 1999); *Stockburger v. Ray*, 488 S.W.2d 378, 382 (Tenn. Ct. App. 1972).

We have reviewed the evidence in the record in accordance with Tenn. R. App. P. 13(d). We find no evidence in the record substantiating Karl Francis's claim for reimbursement for his father's funeral expenses. Accordingly, we conclude that the evidence does not support the trial court's decision to order Ms. Francis to pay $5,484.60 to Karl Francis. Therefore, we reverse this portion of the judgment and, on remand, direct that an order be entered dismissing this claim with prejudice.

---

[17]*Wilson v. Johnson*, 566 S.W.2d 855, 857 (Tenn. 1978); *King v. King*, 986 S.W.2d 216, 220 (Tenn. Ct. App. 1998); *Irvin v. City of Clarksville*, 767 S.W.2d 649, 653 (Tenn. Ct. App. 1988).

[18]*Anderson v. Sharp*, 195 Tenn. 274, 281, 259 S.W.2d 521, 523 (1953); *Scarbrough v. Scarbrough*, 752 S.W.2d 94, 97 (Tenn. Ct. App. 1988); *Sparkle Laundry & Cleaners, Inc. v. Kelton*, 595 S.W.2d 88, 94 (Tenn. Ct. App. 1979).

[19]The appeal by Ms. Francis's estate would have been subject to dismissal under Tenn. R. App. P. 26(b) because of the failure to file either a transcript or statement of the evidence within the time required by Tenn. R. App. P. 24(b), (c).

[20]In fact, Karl Francis did request the trial court to correct the statement of the evidence. However, the corrections he requested involved the disputed certificate of deposit, not the disputed funeral expenses.

**IV.**

We affirm the portion of the judgment regarding the parties' claims involving Mr. Francis's $100,000 certificate of deposit and reverse the portion of the judgment directing Ms. Francis to pay Karl Francis $5,484.60. We remand the case to the trial court for whatever further proceedings consistent with this opinion are required. We tax the costs of this appeal in equal proportions to the Estate of Nan Francis and its surety and to Karl Francis for which execution, if necessary, may issue.

123

WILLIAM C. KOCH, JR., JUDGE